UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEXTER HEMMINGS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>DAVID EBBERT, Warden,<br><br>　　　　Respondent | CIVIL ACTION NO. 1:15-CV-01298<br><br>(KANE, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

On June 30, 2015, the Court received and filed a counseled petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241 by the Petitioner, Dexter Hemmings. (Doc. 1). The Petitioner challenges two incident reports filed against him on February 5, 2015, and February 6, 2015, while on home confinement under the supervision of the Bronx Community Re-Entry Center. Specifically, Petitioner contends that the disciplinary hearing held on those incident reports did not comport with appropriate procedural safeguards and that the outcome of the disciplinary hearing was not supported by "some evidence."

The petition has been fully briefed, and a telephone status conference was held on February 11, 2016, for the purpose of clarifying the positions of the parties in light of supplemental briefing filed. At the telephone conference, Respondent appeared to concede that the disciplinary hearing conducted by the Center Disciplinary Committee may have suffered from procedural deficiencies, and accordingly requested that the Court remand this matter to the Bureau of Prisons ("BOP") and direct that a new disciplinary hearing be held for the two incident reports.

Based on the parties' concessions, it will be recommended that the petition be granted

insofar as the Court recommends that this matter be remanded to the BOP to conduct a curative disciplinary hearing with respect to each incident report issued to Hemmings.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Hemmings was sentenced on February 11, 2013, by the United States District Court for the Southern District of New York to a term of fifty-seven months imprisonment and three years of supervised release for conspiring to distribute and possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(C). (Doc. 1, at 12). While incarcerated at the United States Penitentiary at Canaan, Pennsylvania, Hemmings enrolled in and successfully completed the 500-hour Residential Drug Abuse Program ("RDAP"). (Doc. 1, at 14). On December 18, 2014, he was transferred to the Transitional Drug Abuse Treatment program ("TDAT"), and placed on home confinement supervised by the Bronx Community Re-Entry Center ("BXCRC"), until June 10, 2015.(Doc. 1, at 14).

The factual allegations forming the basis of this habeas petition arise from two incident reports issued against Petitioner on February 5, 2015, and February 6, 2015. Specifically, on February 5, 2015, Hemmings appeared at the BXCRC and was notified that he would be subjected to a random urinalysis. (Doc. 1, at 14). Hemmings alleges that while he was attempting to provide the required urine sample in the presence of Mr. Seawright, a staff member administering the test, Mr. Seawright made an inappropriate comment to Hemmings, to which Hemmings responded that he could file a complaint against Mr. Seawright for his inappropriate behavior. (Doc. 1, at 14). He claims that when he left the bathroom, other staff members, who had overheard the inappropriate comment Mr. Seawright made, were laughing at him and taunting him. (Doc. 1, at 14-15). He also claims that a supervisor, Ms. Daniels, made derogatory comments as he was leaving for the day. (Doc. 1, at 15). When Hemmings

returned home, he drafted complaint forms detailing the incident that occurred in the bathroom with Mr. Seawright and called Ms. Figueroa, a supervisor working in the Residential Reentry Management office, to report the comments Ms. Daniels had made. (Doc. 1, at 15). Later that evening, he received a phone call from C. Leader directing him to appear at the BXCRC the following morning. (Doc. 1, at 15).

On February 6, 2015, Hemmings met with C. Leader. He was informed at that time that Mr. Seawright had filed Incident Report 2693710, charging Hemmings with "Insolence towards a staff member" and "Making sexual proposal or threats to another," in violation of Codes 312 and 206, respectively. (Doc. 1, at 16). At the meeting, C. Leader informed Hemmings that he would be taken off home confinement and would instead reside at the BXCRC until such time as the matter was resolved. (Doc. 1, at 16). Hemmings alleges that he contested the incident report filed against him, and requested that C. Leader ensure that he would not be placed in a position in which he would have to interact with Mr. Seawright, given Mr. Seawright's willingness to file false allegations against him. (Doc. 1, at 16). Purportedly mischaracterizing that request, C. Leader filed second Incident Report 2693707, charging Hemmings with committing the prohibited act of "Threatening another with bodily harm or any other" in violation of Code 203. (Doc. 1, at 16).

On March 9, 2015, Ms. Villanueva, a case manager, conducted an investigation into the events that occurred on February 5, 2015, and provided Hemmings with a notice of rights. (Doc. 1, at 21). He was further informed that a hearing was scheduled to be conducted on the incident reports on March 10, 2015, at 6:10 p.m. At that point, Hemmings provided Ms. Villanueva with a written statement detailing his recollection of the events. Hemmings requested the presence of a staff member at the hearing and furnished Ms. Villanueva with a list

of certain witnesses, identified only by their aliases. (Doc. 1, at 22).

On March 10, 2015, Hemmings appeared for his hearing, which was conducted by case manager Chris Henry. (Doc. 1, at 23). Although Hemmings had requested Facility Director Ms. Artis as his staff representative, Mr. Artis was on extended sick leave, and thus, Ms. Rivera was assigned to be Hemmings's staff representative. (Doc. 1, at 23). Hemmings claims that he was introduced to Ms. Rivera as his staff representative at the hearing, thereby depriving him of the opportunity to meet with Ms. Rivera prior to the hearing so that she could assist him in locating witnesses and obtaining evidence. (Doc. 1, at 23). At the hearing, Hemmings requested that he be granted an adjournment in order to allow his staff representative to assist him in preparing a defense. (Doc. 1, at 23). No explicit ruling was made with respect to his request. However, he was allegedly instructed by Mr. Henry that if he did not conduct the hearing that day, he would be found to have waived his right to a hearing. (Doc. 1, at 24). Hemmings additionally requested that he be permitted to give a written statement memorializing that he was deprived of the opportunity to: obtain witnesses or evidence; adjourn his hearing; and meet with his staff representative in advance of the hearing. (Doc. 1, at 25).

According to Hemmings, he was found at the conclusion of the hearing to have committed the prohibited acts as charged. (Doc. 8-1, at 41-54).[1] Hemmings also alleges that Mr. Henry informed him at that time that the hearing only pertained to the incident filed by C. Leader on February 6, 2015, and that no hearing would be conducted with respect to the incident filed by Mr. Seawright on February 5, 2015. (Doc. 1, at 26).

---

[1] Hemmings alleges that Mr. Henry informed him that a recommendation for sanctions had already been made prior to his alleged hearing. (Doc. 1, at 25).

4

On March 21, 2015, Hemmings received notice that he was found guilty of the disciplinary infractions. Consequently, Hemmings was subsequently transferred to the United States Penitentiary at Canaan to serve an additional twenty months of incarceration due to his removal from the TDAT program, thereby depriving him of a one-year early release deduction, and the revocation of sixty days of good time credit. By representation of the parties, Hemmings is currently incarcerated at a federal prison in Kentucky.

B. PROCEDURAL BACKGROUND

Hemmings, through counsel, filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2241 on June 30, 2015. (Doc. 1). In his petition, Hemmings lodges a constitutional attack on the disciplinary hearing he received; namely, that he was denied due process because he was deprived of a disciplinary hearing by an impartial decision maker; was not provided with effective assistance from a staff representative at the disciplinary hearing; was not afforded the opportunity to present evidence and a defense at said hearing; and was subjected to sanctions that were not supported by "some evidence." (Doc. 1). On September 8, 2015, Respondent filed a response to the petition, arguing that Hemmings failed to exhaust available administrative remedies with respect to incident report number 2693707 and that Hemmings was afforded all required due process protections for both incident reports. (Doc. 8).[2] Hemmings filed a reply brief on September 23, 2015. (Doc. 12). On November 4, 2015, Hemmings filed a supplemental reply brief on the basis of newly discovered evidence that he claims provides irrefutable evidence that he was deprived of his right to due process. (Doc. 13). Specifically, Hemmings discovered an internal memorandum drafted by his staff representative,

---

[2] Respondent expressly abandoned the exhaustion argument during the telephone conference.

Ms. Rivera, noting Hemmings's request for an adjournment. Curiously, Hemmings also presents a duplicate copy of that internal memorandum, which was edited to omit any reference to Hemmings's request for an adjournment. (Doc. 13, at 1). Moreover, Hemmings attaches an internal memorandum drafted by Mr. Henry, the BXCRC hearing officer, which notes that Hemmings submitted a written statement to his Staff Representative. (Doc. 13, at 2). However, that handwritten statement was apparently never included among the evidence considered by Mr. Henry or the BOP's Disciplinary Hearing Officer ("DHO"). (Doc. 13, at 6).

On December 3, 2015, Respondent filed a sur-reply addressing the newly discovered evidence presented by Hemmings in his supplemental reply brief. (Doc. 17). In this sur-reply, Respondent avers that the additional statement referenced by Mr. Henry in the internal memorandum cannot be located. (Doc. 17, at 2-3). Thus, Respondent suggests that the proper remedy to ensure Hemmings is afforded minimum due process is to remand the matter back to the BOP to conduct a curative hearing with respect to each of the incident reports. (Doc. 17, at 5).

The Court conducted a telephonic status conference for the purpose of clarifying the parties' positions in light of the supplemental briefing that was filed. Respondent reiterated its concession that, given the misplacement the handwritten statement purportedly forming the basis of the disciplinary hearing, the appropriate course at this juncture is to conditionally grant the writ and in doing so, direct the BOP to conduct a renewed disciplinary hearing. Hemmings, however, adamantly seeks expungement of his disciplinary record and immediate release from prison. Specifically, he argues that if a new hearing were to be ordered at this point, he would be deprived of any meaningful opportunity to prepare an adequate defense for the following reasons: (1) the additional statement, containing a clearer recollection of Hemmings's defense,

has been "misplaced;" (2) more than a year has passed since the alleged incidents occurred; (3) any potential witnesses are likely no longer residing at the BXCRC; (4) he has since been transferred to a prison in Kentucky; and, (5) there has been "a showing of malicious action or bad faith on behalf of BOP employees." (Doc. 19, at 2).

Based on the unique facts of this case, for the reasons provided below, it is respectfully recommended that this petition be granted and this matter be remanded for further disciplinary proceedings.

## II.  DISCUSSION

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Nevertheless, as recognized by the Supreme Court of the United States in *Wolff v. McDonnell,* 418 U.S. 539 (1974), an inmate must be afforded certain minimum procedural due process safeguards with respect to the prison disciplinary hearing, including: (1) a right to appear before an impartial decision-making body; (2) written notice of the charges at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence in his defense when consistent with institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or complex issues are involved; and (5) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff,* 418 U.S. at 563–67; *see also Superintendent v. Hill,* 472 U.S. 445, 454 (1985); *Von Kahl v. Brennan,* 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Additionally, the decision must be supported by some evidence in the record. *Hill,* 472 U.S. at 454. The scope of judicial review of the BOP's disciplinary decisions is limited to confirming that the inmate was afforded the minimum procedural due process rights

and that there was "some evidence" to support the DHO's conclusions. *See Hill*, 472 U.S. at 457.

Because the alleged incidents occurred at the BXCRC, due process is afforded at a Center Disciplinary Committee ("CDC") hearing. BOP Program Statement 7300.09 governs disciplinary proceedings at community corrections facilities like the BXCRC. Pursuant to Program Statement 7300.09, community corrections facilities are required to develop and tailor internal disciplinary procedures to conform with the due process mandates defined by the United States Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

While the BOP Program Statement 7300.09 enables community corrections facilities to implement "their own discipline procedures as long as they comply with the due process requirements of *Wolff v. McDonnell*," the CDC's procedures generally track "those procedures as set forth in BOP Program Statement 5270.09, *Inmate Discipline,*" codified at 28 C.F.R. § 541.5, *et seq. Manfredi v. United States*, No. CIV. 12-1905 RMB, 2012 WL 5880343, at *5 (D.N.J. Nov. 20, 2012). Specifically, upon belief that an inmate committed a prohibited act, a staff member will initiate disciplinary proceedings by issuing an incident report, at which point an investigation into the alleged misconduct will be conducted. Inmates cited for rules infractions are entitled to receive a hearing before the CDC who adjudicates the alleged violation. At that hearing, the inmate is provided a series of procedural rights. The CDC may arrange for the presence of a staff member to represent the inmate at the hearing. The inmate has a right to be present throughout the disciplinary hearing. The inmate is entitled to submit names of requested witnesses and have them called to testify. The inmate is also permitted to make a statement and present documentary evidence on his own behalf.

The regulations require that the CDC consider all evidence presented at the hearing. *Ulatowski v. Ebbert*, No. 1:12-CV-254, 2013 WL 504611, at *4 (M.D. Pa. Jan. 14, 2013) *report and recommendation adopted,* No. 1:12-CV-254, 2013 WL 498733 (M.D. Pa. Feb. 8, 2013). The decision of the CDC must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. § 541.17(f). Finally, the CDC must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the CDC's findings, the CDC's decision and the specific evidence relied upon.

At the conclusion of the hearing, the CDC submits a comprehensive hearing packet, along with its recommended disposition, to the BOP's designated DHO. *Sierra v. Scism*, No. 1:10-CV-1885, 2010 WL 5553955, at *6 (M.D. Pa. Dec. 14, 2010) *report and recommendation adopted*, No. 1:10-CV-1885, 2011 WL 65665 (M.D. Pa. Jan. 7, 2011). The DHO then reviews the CDC materials to ensure that due process requirements have been satisfied and makes a final decision regarding any sanctions to be imposed for any infractions found to have been committed as supported by the evidence. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. § 541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. *See, e.g., Fiore v. Lindsay,* 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); *Macia v. Williamson,* 219 F. App'x 229 (3d Cir. 2007) (same); *Reynolds v. Williamson,* 197 F. App'x 196

(3d Cir. 2006) (same); *Levi v. Holt,* 193 F. App'x 172 (3d Cir. 2006) (same); *Sinde v. Gerlinski,* 252 F.Supp.2d 144 (M.D. Pa. 2003) (same).

While cognizant of the procedural safeguards applicable in the context of prison disciplinary hearings, here, the Court need not resolve whether there was a failure to scrupulously adhere to the aforementioned procedural requirements that allegedly caused direct, demonstrable prejudice to Hemmings, as Respondent has conceded that the March 10, 2015 disciplinary hearing may have suffered from procedural flaws precluding the BOP from considering all of the evidence presented, and further has candidly acknowledged that a curative disciplinary hearing should be held for each incident report.

Hemmings contends, however, that expungement is the only appropriate relief because a new hearing would not afford him any meaningful opportunity to prepare an adequate defense. In support of this argument, Hemmings relies on *McCrery v. Mark*, 823 F. Supp. 288 (E.D. Pa. 1993), and *Malik v. Wilkerson*, No. CIV. A. 93-5271, 1994 WL 61804, at *1 (E.D. Pa. Feb. 28, 1994), two non-precedential cases, one of which relies on *Paine v. Baker,* 595 F.2d 197 (4th Cir.1979), an out of circuit case recognizing a limited constitutional right to have incorrect information expunged from a prisoner's record. *See McCrery*, 823 F. Supp. at 291. Indeed, the Fourth Circuit Court of Appeals in *Paine* established that a prisoner may have a federal due process right to expungement of his prison record where: (1) the allegedly erroneous information is in the prisoner's file, (2) the information in question was actually false, and (3) the information was relied upon "to a constitutionally significant degree." 595 F.2d at 201-02. However, the Third Circuit Court of Appeals has not endorsed the right of expungement announced in *Paine*, "and other Circuit Courts of Appeals have expressly questioned its precedential value." *Williams v. Fed. Bureau of Prisons,* 85 F. App'x 299, 303 (3rd Cir. 2004)

(citing *Johnson v. Rodriguez,* 110 F.3d 299, 308–09 n. 13 (5th Cir.1997)). Moreover, even presuming that Hemmings's expungement claim is cognizable in a habeas action, Hemmings has failed to offer any factual showing that false information in his file was relied upon to a constitutionally significant degree. *See McCrery*, 823 F. Supp. at 291 ("[T]his court finds that plaintiff has failed to satisfy the third condition . . . . [M]ost importantly, plaintiff has not claimed that the supposedly false information in his file has in fact been relied upon to any degree, let alone 'to a constitutionally significant degree.'"). In consideration of the Third Circuit's reluctance to recognize a right to expungement in this context, and Hemmings's failure to persuade this Court that application of *Paine* and thus expansion beyond existing Third Circuit precedent  is warranted here, the Court will respectfully recommend that this matter be remanded to the BOP to enable the agency to correct the procedural shortcomings in its initial decision. *See Abramovitz*, 2011 WL 4528481, at *9 ("In the past, when confronted with prison administrative decisions that were procedurally flawed, this Court has remanded matters to the  [BOP] to enable that agency to correct the procedural shortcomings in its initial decisions.")  (citing *Krueger v. Martinez,* 665 F.Supp.2d. 477, 484–86 (M.D. Pa. 2009)).[3]

---

[3] In reaching this result, the Court emphasizes the narrow nature of its recommendation. Specifically, the Court merely recommends remand to permit the BOP the opportunity to correct whatever procedural deficiencies may have existed at the initial disciplinary hearing. The Court does not address any of the other claims raised by Petitioner, nor reaches the merits of any final agency actions. Moreover, in doing so, the Court does not intimate what result may be appropriate in this case. Rather, the Court "believe[s] that considerations of comity and deference to agency decision making should permit the [BOP] to first assess this mater in a fashion which fully satisfies the requirements of procedural due process." *See Abramovitz*, 2011 WL 4528481, at *9 n.3.

As an aside, Hemmings has requested that should this Court recommend a remand, it should direct the BOP to videotape the renewed disciplinary hearing. This, the Court cannot do, as it is not in a position to dictate how the BOP should conduct its disciplinary proceedings beyond that which is required by *Wolff v. McDonnell,* 418 U.S. 539 (1974).

### III. R<small>ECOMMENDATION</small>

Based on the foregoing, it is recommended that the petition (Doc. 1), be **GRANTED** in part, in that this matter should be remanded to the DHO for further disciplinary proceedings on Incident Reports 2693710 and 2693707.

Dated: **February 25, 2016**                               *s/ Karoline Mehalchick*
                                                                            **KAROLINE MEHALCHICK**
                                                                            **United States Magistrate Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEXTER HEMMINGS, | |
| Petitioner, | CIVIL ACTION NO. 1:15-CV-01298 |
| v. | (KANE, J.) (MEHALCHICK, M.J.) |
| DAVID EBBERT, Warden, | |
| Respondent | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 25, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: February 25, 2016**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**